CA NO. 24-3077, 3663, 6045

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff-Appellee,<br><br>v.<br><br>JERRY NEHL BOYLAN,<br><br>    Defendant-Appellant. | DC NO. 2:22-CR-00482-GW-1 |

---

**DEFENDANT-APPELLANT'S OPPOSITION TO GOVERNMENT'S
MOTION FOR RECONSIDERATION**

---

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF CALIFORNIA

HONORABLE GEORGE H. WU
United States District Judge

CUAUHTEMOC ORTEGA
Federal Public Defender
HUNTER HANEY
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081
Email: hunter_haney@fd.org

Attorneys for Defendant-Appellant

**DEFENDANT-APPELLANT'S OPPOSITION TO GOVERNMENT'S MOTION FOR RECONSIDERATION**

Defendant-Appellant Jerry Nehl Boylan, by and through his attorney of record, Deputy Federal Public Defender Hunter Haney, hereby opposes the government's request for reconsideration of this Court's order granting defendant-appellant an 120-day extension of time to file his opening brief.

For the reasons explained below, the government's motion is both procedurally and substantively flawed and should be denied. As an initial matter, the government fails to mention—let alone argue under—the relevant legal standard for reconsideration motions. Reconsideration is a "disfavored" remedy reserved for exceptional circumstances. The government's failure to justify the extraordinary relief it seeks alone warrants denying the motion.

Moreover, the government's purported reasons for reconsideration—beyond having already been duly considered by this Court—come woefully short of undermining Boylan's thorough showing of necessity. At bottom, and in the government's own words, "this is no ordinary case." D. Ct. Dkt. 343 at 2. It presents highly nuanced and important legal issues that warranted granting bond pending appeal. Much of the government's motion appears to stem its disagreement with that bond decision, but it did not exercise its right to appeal that decision. And the government has failed to otherwise show that this Court overlooked or misapprehended any facts or law—or that circumstances changed—

1

when it made the entirely "ordinary" decision to grant Boylan an additional 72 days beyond what he sought in his original extension motion to file the opening brief.

The motion should be denied.

## A.    Legal Standard for Motions for Reconsideration

Reconsideration motions are "disfavored by the Court and are rarely granted. The filing of such motions is discouraged." 9th Cir. Rule 27-1(4). Consistent with their "disfavored" status, the legal standard governing reconsideration motions provides that reconsideration motions are reserved for specific, narrow, and exceptional circumstances, namely: "[a] party seeking [reconsideration] shall state with particularity the points of law or fact which, in the opinion of the movant, the Court has overlooked or misunderstood. Changes in legal or factual circumstances which may entitle the movant to relief also shall be stated with particularity." 9th Cir. Rule 27-10(a)(3).[1]

---

[1] The advisory committee notes to the Rule elaborate that reconsideration motions "are not favored by the Court and should be utilized only where counsel believes that the Court has overlooked or misunderstood a point of law or fact, or where there is a change in legal or factual circumstances after the order which would entitle the movant to relief." 9th Cir. Rule 27-10 adv. comm. note.

**B.    The Government Doesn't Attempt to Meet the Legal Standard for a
Reconsideration Motion.**

The government's motion does not argue that the legal standard for a
reconsideration motion is met.  In fact, it does not even *cite* to the relevant legal
standard.  No part of the motion even implies—much less states with the requisite
"particularity"—a matter that was "overlooked or misunderstood" by this Court.
So, too, for "[c]hanges in legal or factual circumstances" between the filing of
Boylan's motion for an extension of time on January 8, 2025, and the granting of
Boylan's motion a mere nine days later, on January 17, 2025.  Nor is the
government capable of making that showing.  As will be explained *infra*, Part C,
the government's motion shows that it was well aware of the purported bases for
reconsideration at the time Boylan filed his motion, but it deliberately declined to
file a written opposition so that this Court could consider them.

For these deficiencies alone, this Court can—and should—decline to
countenance the government's sandbagging and reject the government's motion as
procedurally deficient.

**C.    The Alleged Bases for the Government's Motion Are Meritless.**

As the government's motion and the history of the instant appeals reflect, the
government has wholly failed to demonstrate "overlooked or misunderstood"
points of law or fact, or "[c]hanges in legal or factual circumstances" that warrant
the "disfavored" remedy of reconsideration.  And the purported bases for

3

reconsideration government don't even minimally undermine the thorough showing of "extraordinary and compelling circumstances" that soundly supported the court's order extending time.

The government identifies two reasons for its motion, but each of those circumstances was well-known to the government at the time of Boylan's motion. It complains that the extension isn't in the "interests of the family members of the 34 victims of defendant's gross negligence" or "the public" because of Boylan's "continued bond status wile pending appeal[.]" ECF No. 19 at 4. It also alleges that Boylan's motion didn't set forth "extraordinary and compelling circumstances" beyond counsel's "overall case load" warranting an extension. ECF No. 19 at 3.

But the government was certainly aware it could've filed a written opposition asserting these bases, avoiding any purported need for reconsideration. It filed such an opposition before, ECF No. 13, and, as its present motion expressly acknowledges, the bases it asserts now are substantially the same as those in its previous opposition. ECF No. 19 at 2; *see* ECF No. 13 (opposing extension due to victims families' interests and insufficient justification).[2] The government also explained the deliberateness of its choice in an email to undersigned counsel on

---

[2] The Court was also aware of this prior history in granting Boylan's most recent extension request, as Boylan specifically explained the basis for the government's prior opposition in his motion. ECF No. 17 at 2-3.

4

January 7, 2025, emphasizing that it did not wish to file a written opposition to conserve the parties' resources. *See* Exhibit A ("please put this position—the government opposes any extension beyond 14 days—in your motion this time, so we don't have to file a separate opposition (and then you have to reply, etc.)").[3]

Moreover, the "interests of the family members" in seeing that Boylan is imprisoned, and the "extraordinary and compelling circumstances" justifying Boylan's requested extension didn't change in the nine-day period between Boylan's motion and the instant motion. And they could not have been "overlooked or misunderstood[,]" because Boylan more-than-adequately explained those circumstances in his motion, as the government's refusal to file a written opposition to the motion shows. *See* ECF No. 17 at 2-3 (Boylan's motion's explaining the reasons for the government's prior opposition).

In essence, then, the government's filing is nothing more than a belated written opposition masquerading as a reconsideration motion. Setting aside its flouting the ordinary rules of motion practice and reconsideration requests, the government's opposition is baseless. It cherry-picks a few facts from Boylan's motion and argues they are insufficient to justify the extension. And it otherwise

---

[3] The government's unfortunate decision to file a motion for reconsideration in lieu of a written opposition to Boylan's original motion has required an unnecessary, additional day of undersigned counsel's resources preparing this opposition that he could have otherwise dedicated to perfecting the appeal.

focuses on a circumstance—Boylan's remaining at liberty for too long after having

obtained bond pending appeal—that the government could have easily sought to

avoid, and which is, in any event, not an appropriate reason to refuse an extension.

   *First*, Boylan's motion more-than-sufficiently justified the requested 120-

day extension—only 72 days beyond what he sought in his first extension motion

in this case.  ECF No. 17.  Over a 12-page declaration, counsel outlined, in

painstaking detail, a chronology of his diligence over the prior extension period,

including his prescheduled annual leave through much of October, his oral

argument schedule, the several briefs and motions he filed in other cases, and other

mandatory obligations to his cases and office.  *Id.*  He also outlined his progress as

sole appellate counsel reviewing this complex appeal (comprised of thousands of

pages of docket entries and transcript pages), including working several weekends

and leave days over the December-January holidays solely on these appeals in an

attempt to meet this Court's deadline.[4]  However, because counsel had been unable

to complete his record review, much less draft the opening brief, the unique

complexity of the matter warranted additional time.  Counsel further explained his

anticipated obligations to other clients, including but not limited to two oral

---

[4] The instant opposition was drafted on the Martin Luther King, Jr. Day
federal holiday.

arguments scheduled in February and March 2025, over the next 120 days.[5]  In counsel's professional judgment, an additional 120-day extension was imperative to ensure focused briefing before this Court and effective assistance of appellate counsel, particularly in a case, such as this, where a district court has already concluded Boylan's appeal of his conviction presents a substantial question of law or fact likely to result in ... reversal" or a "new trial[.]" 18 U.S.C. § 3143(b)(1)(B).

Completely eliding this substantial showing, the government urges that only a 14-day extension (making Boylan's opening brief due in nine days, or January 29, 2025, despite undersigned counsel's not having even completed a review of the record) was appropriate for filing the opening brief.[6]  But, as the government acknowledged in a prior filing in this matter, "this is no ordinary case." D. Ct. Dkt. 343 at 2.  It now minimizes the complexity of this appeal, again citing the involvement of another appellate attorney in the trial proceedings below.  ECF No. 19 at 4-5; *see* ECF No. 13.  However, as Boylan's motion (and reply brief in support of his first extension motion) previously explained (and the government

_____

[5] This Court has since calendared oral argument in *Gonzalez v. Herrera*, CA9 No. 24-2371, for March 28.

[6] The government's motion lists only two appeals, but, in actuality, this matter is comprised of three consolidated appeals, now including Boylan's October 2024-filed restitution appeal. *See* ECF No. 16 (consolidating No. 24-6045 and ordering the "parties" to "include all case numbers on future filings"). If Boylan raises any issues pertaining to the restitution order, they will also be encompassed in his consolidated opening brief.

again omits), that attorney left the Federal Public Defender's office in May 2024,

leading to undersigned counsel's assignment. ECF No. 17 at 3-4; *see* ECF No. 14

at 7. Undersigned counsel had no prior familiarity with the case or the

scientifically and legally complex issues it presents, and was unable to begin that

review for several months due to his work on other older appeals pending in this

Court and his work on contested issues (related to bond pending appeal and

restitution) at the district-court level in this case. ECF No. 17 at 3-4; *see* ECF No.

12. Thus, however "extensively plowed" the legal issues in this case are from the

government's perspective, ECF No. 19 at 4, Boylan's constitutional right to

effective assistance of appellate counsel necessitates that undersigned counsel

conduct an independent review of the record to assess the viability of both

preserved and unpreserved issues. ECF No. 14 at 6-7.

      The government also appears to argue that Boylan didn't sufficiently allege

*new* circumstances compared to his first extension motion. ECF No. 19 at 3-4 n.2.

An extension of time may be granted upon a "showing of diligence and substantial

need." 9th Cir. Rule 31-2(b). In this Court's first order granting Boylan's

extension motion in part, the Court stated that it was "not inclined" to grant further

extensions absent "extraordinary and compelling circumstances." ECF No. 15.

The Court did not indicate that these "extraordinary and compelling

circumstances" had to be *new* circumstances (as it has in its recent order, *see* ECF

8

No. 18), but Boylan's motion set forth several of those anyway. For instance, Boylan described:

> (1) the unanticipatedly voluminous trial exhibits;
> (2) the unexpected discovery of novel issues warranting additional research;
> (3) counsel's inability to locate certain documents and the resultant required motion practice in the district court;
> (4) the ongoing restitution litigation in the district court (and the new, consolidated appeal, which necessitated the ordering and filing of additional transcripts in October and November);
> (5) undersigned counsel's assignment to several new appeals, some of which have required urgent attention; and,
> (6) undersigned counsel's being scheduled to appear in two oral argument recently calendared for February and March 2025.

ECF No. 17. The government's motion is silent as to all of these circumstances. While it does select a few matters Boylan addressed mentioned in his first extension motion to argue that nothing has changed, ECF No. 19 at 3-4 n.2, it neglects Boylan's specific explanation as to how he had not, at the time of his first motion, had time to review those matters, and thus did not originally appreciate the extent of time required for review. ECF No. 17 at 5-6. As such, Boylan amply showed "extraordinary and compelling circumstances"—new ones, no less—and the government's contrary arguments are meritless.[7]

_____

[7] In an appeal involving the tragic deaths of 34 individuals due to an accidental fire, the government seeks to exploit the recent Los Angeles wildfires to argue that Boylan's extension request was unjustified because it "was filed after the Los Angeles wildfires began" but "said nothing about" them. ECF No. 19 at 5 & n.3. The government is correct that the wildfires were not a basis for Boylan's motion. But the wildfires are irrelevant because, as explained, the existing circumstances outlined in Boylan's motion abundantly supported the proposed

*Second*, an extension of time only 72 days greater than what Boylan

originally contemplated is warranted despite any interest of the "families of

victims" and the "public" in a speedy appeal. As previously noted, this argument

is premised solely on Boylan's having been granted bond pending appeal (*i.e.*, it

would not be pursued if Boylan was in prison). *See* ECF No. 14 at 3. But as

Boylan's motion elaborated (and the government ignores), the government

declined to exercise its right to appeal that decision. ECF No. 17 at 3 n.1; *see* 18

U.S.C. §§ 3143(c), 3731 (providing for, and outlining procedures governing,

government appeal of release order). In other words, the government had a

---

extension. Moreover, the wildfires couldn't have reasonably been asserted in
Boylan's motion under the circumstances. As the attached declaration of counsel
explains, undersigned counsel completed drafting Boylan's extension motion and
submitted the document to his assistant for filing at 3:29 p.m. on January 7, 2025—
the day before the wildfires. *See* Haney Decl. ¶ 4. Undersigned counsel's assistant
filed the motion on 10:00 a.m. on January 8, 2025, after the wildfires had begun to
decimate the Los Angeles area overnight, but were continuing to grow and prompt
widespread evacuations. *Id.* Undersigned counsel did not amend his motion
before filing it to address the fires because the situation was rapidly evolving. *Id.*
In fact, he was occupied at that time assisting his parents with complying with an
order, just hours before the time of filing, to evacuate their family home (where
undersigned counsel grew up) in response to the Eaton Fire. *Id.* Because the
government did not file a written opposition to the extension request (obviating the
need for a reply addressing the affects of the fire), and because much of
undersigned counsel's schedule the following week was dedicated to housing and
otherwise assisting his family during this time of emergency, as well as coping
with the physical and emotional toll of the fires, undersigned counsel did not seek
to incorporate these circumstances into Boylan's extension request. *Id.*

mechanism that would have alleviated the precise prejudice it now asserts, but it declined to avail itself of that relief.

Moreover, and as Boylan explained in more detail in his reply brief supporting of his prior extension request, the government's argument turns the legal standard for extensions on its head. ECF No. 14 at 4-6. The relevant focus is whether *Boylan* has a "substantial need" for the extension and has shown "diligence" in pursuing his appeal, not the interests of counterparties or third parties in a speedy appeal. 9th Cir. Rule 31-2(b). This is presumably because other legal mechanisms exist (*e.g.*, statutory bond pending appeal and appellate review of those determinations) for vindicating those interests. Critically, the government's position only accounts for the possibility that this Court will affirm, and asserts the public (and the victims' families) need that resolution sooner. But any public interest in a speedy resolution is at least counterbalanced by the public interest in the correct resolution, *i.e.*, assuring Boylan's conviction and sentence are legal. That latter interest is surely at its zenith where a district judge has already determined the "appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result" in reversal or a new trial, 18 U.S.C. § 3143(b)(1)(B)(i)-(ii), and that the defendant is not likely to flee or pose a danger to the public.

The government's apparent position that a grant of bond pending appeal requires compressing the appeal schedule would unfairly narrow the appellate

11

rights of this most worthy class of defendants. ECF No. 14 at 4-6. This outcome incentivizes the government to sit on its rights (declining to appeal the granting of bond) and weaponize a purported exigency resulting from that litigation decision in order to fast-track a complex appeal, all at the defendant's—and the justice system's—expense. *But see, e.g.*, *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 950 (9th Cir. 2001) (a party should not, as an equitable matter, be permitted to "sleep upon his rights" (quotation omitted)).

Reconsideration of the Court's order would also threaten undersigned counsel's effective representation of his other clients, and undermine the appearance of—if not the actual—even-handed administration of justice in this Court's docket management. Even under the now-operative scheduling order, the demands of this complex case have required undersigned counsel to prioritize these appeals over several others involving incarcerated clients. Inevitably, undersigned counsel has had to inform his other clients that, due to the scheduling requirements of these appeals, he is unable to dedicate resources to reviewing their appeal. Haney Decl. ¶ 2. Despite counsel's best efforts to balance his caseload, this has resulted in delays of months more than usual for some clients. Haney Decl. ¶ 2. At least one these clients is already serving a shorter sentence than the sentence that Boylan received. Haney Decl. ¶ 2.

To the extent the Court even partially shortens the time provided for the opening brief, undersigned counsel will need to prioritize these appeals over all of

12

his other work to a greater extent than his motion originally contemplated (including those cases with upcoming oral arguments). He will be placed in the untenable position of informing his other clients that he has had to deprioritize his work in their cases simply because they are incarcerated, while Boylan is not. However, the justice system doesn't, as a general matter, distinguish between incarcerated and non-incarcerated individuals, or otherwise by status, for appeal-processing purposes, whether under the Sixth Amendment, statute or court rule, or as a policy matter. *Cf. Douglas v. California*, 372 U.S. 353, 357 (1963) (constitutional right to appellate counsel on first direct appeal extends to "rich and poor alike"). Nonetheless, the effects of reconsidering the Court's extension order may well operate not just to curtail the effective representation of Boylan, *see* ECF No. 17 at 5-6, 12, but that of undersigned counsel's other clients. It will also impair at least the appearance of even-handed administration of justice in this Court's docket-management decisions. This Court should refuse to entertain such an outcome.

For the foregoing reasons, the government has failed to meet its burden of demonstrating "overlooked or misunderstood" points of law or fact, or "[c]hanges in legal or factual circumstances[,]" underlying the Court's order granting Boylan's extension request. 9th Cir. Rule 27-10(a)(3).

13

## D.    Conclusion

The government's motion for reconsideration should be denied.

Respectfully submitted,
CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: January 21, 2025         By  s/ *Hunter Haney*

HUNTER HANEY
Deputy Federal Public Defender
Attorney for Defendant-Appellant

## DECLARATION OF HUNTER HANEY

I declare under penalty of perjury that, to the best of my knowledge, the following is true and correct:

1.     I am a Deputy Federal Public Defender with the Federal Public Defender's Office in the Central District of California.  I represent Jerry Nehl Boylan as appellant in his appeal from the judgment of conviction, CA No. 23-3077, and as appellee in the government's cross-appeal, CA No. 24-3663.  I also represent Mr. Boylan in his newly filed, October 3, 2024 appeal of the amended judgment incorporating the district court's restitution order, CA No. 24-6045.  I make this declaration in support of Boylan's opposition to the government's motion for reconsideration of the Court's decision to grant Boylan an additional 120 days' time to file his opening brief in his two appeals.

2.     In order to comply with the scheduling requirements of these appeals, I have had to inform some of my other clients that I am unable to dedicate resources to reviewing their appeal.  Although I am doing my best to balance my obligations to all of my clients, the scheduling order in these appeals has resulted in delays in processing my other appeals and assigned matters, some extending several months more than usual.  At least one affected client is already serving a shorter sentence than the sentence that Boylan received.

3.     As I was preparing my extension request on January 7, 2025, I emailed counsel for the government, Alexander Robbins, to seek his position on

15

the motion.  A true and correct copy of Mr. Robbins's response to my email is attached as Exhibit "A" hereto.

4.      I completed drafting Boylan's extension motion and submitted the document to my legal assistant for filing at 3:29 p.m. on January 7, 2025—the day before the catastrophic wildfires struck the greater Los Angeles area.  My assistant filed the motion on 10:00 a.m. on January 8, 2025, after the wildfires had begun to decimate the area overnight, but were continuing to grow and prompt widespread evacuations.  I did not amend my motion before filing it to address the fires because the situation was rapidly evolving.  I was occupied at the time of filing assisting my parents with complying with an order, just hours before the time of filing, to evacuate my family home (where I grew up) in response to the Eaton Fire.  Much of my schedule the following week was dedicated to housing and otherwise assisting his family during this time of emergency, as well as coping with the physical and emotional toll of the fires.  As a result, I did not have the ability to seek to amend my extension request, deeming it unnecessary given the circumstances already outlined in my preexisting 12-page supporting declaration. Executed on January 21, 2025 in Los Angeles, California.

By  */s/ Hunter Haney*
        HUNTER HANEY
        Deputy Federal Public Defender

16

# EXHIBIT A

| | |
|---|---|
| **From:** | Robbins, Alexander (USACAC) |
| **To:** | Hunter Haney |
| **Subject:** | RE: U.S. v. Boylan, 24-3077 |
| **Date:** | Tuesday, January 7, 2025 2:48:47 PM |

Hello Hunter!  Happy New Year!

We oppose in part: we oppose any extension beyond 14 days.

And if you would, please put this position—the government opposes any extension beyond 14 days—in your motion this time, so we don't have to file a separate opposition (and then you have to reply, etc.).  That'd be much appreciated.

Thanks!

Alex

---

**From:** Hunter Haney <Hunter_Haney@fd.org>
**Sent:** Tuesday, January 7, 2025 2:36 PM
**To:** Robbins, Alexander (USACAC) <ARobbins1@usa.doj.gov>
**Subject:** [EXTERNAL] RE: U.S. v. Boylan, 24-3077

Hi Alex,

Hope you're doing well.

I am writing because I plan to file a motion for a 120-day extension to file the appellant's opening brief in this matter.  Please let me know the government's position when you are able. My motion is due tomorrow, January 8.

Thanks,
Hunter

---

**From:** Robbins, Alexander (USACAC) <Alexander.P.Robbins@usdoj.gov>
**Sent:** Thursday, August 29, 2024 10:10 AM
**To:** Hunter Haney <Hunter_Haney@fd.org>
**Subject:** Re: U.S. v. Boylan, 24-3077

Hey Hunter, thanks for reaching out. I'm doing well, thank you.

We're not gonna be able to agree to a half-year extension.  Which I feel a little bit bad telling you, since Margaret and David and I have had a great working relationship, and I realize that both of our sections are working extremely hard and are sometimes

swamped.

But your client killed 34 people through his gross negligence years ago and is still at liberty.  The victims' families and loved ones deserve this case to be decided in a timely fashion.  And your client has also had the benefit of not one but two extraordinarily talented appellate lawyers working on his case for many months.  (Josh Weiss was one the best opposing counsel I've ever argued against, and I've been doing this for 15 years.)  This isn't a new case for your office or your section.

If the Conception had sank off the coast of Long Island, in the SDNY and Second Circuit, you would get exactly 30 more days (since you've already taken the CA9 streamlined 30 days on top of the initial 30 days under the rules), for a hard-stop total of 90 days.  But I realize we're not in the Second Circuit.  How about a 60-day additional extension, for a total of 120 — or, if need be, a 90-day FINAL extension (for a grand total of 150 days)?

In all events, we, of course, will commit in advance to adhering to the same deadlines for our own brief.

Best, and please let me know if you want to discuss anything.

Alex

---

Get Outlook for iOS yes, thank you

---

**From:** Hunter Haney <Hunter_Haney@fd.org>
**Sent:** Wednesday, August 28, 2024 10:09 PM
**To:** Robbins, Alexander (USACAC) <ARobbins1@usa.doj.gov>
**Subject:** [EXTERNAL] U.S. v. Boylan, 24-3077

Hi AUSA Robbins,

I hope this email finds you well.

I am writing because I intend to file a motion for a 180-day extension to file the appellant's opening brief in this matter.  Please let me know the government's position as soon as you are able.  My motion is due tomorrow, August 29th.

Thank you for your time.

Hunter



**Hunter Haney** (he/him)
**Deputy Federal Public Defender, Writs and Appeals Unit**
**Office of the Federal Public Defender**
**Central District of California**
321 E 2nd Street | Los Angeles, CA 90012 | fpdcdca.org
**O:** 213.894.7330 | **F:** 213.894.0081